Entered on Docket March 8, 2013

**Below is the Order of the Court.**

_____
**Marc Barreca
U.S. Bankruptcy Judge**
(Dated as of Entered on Docket date above)

___

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

| | |
|---|---|
| In re:<br><br>**John Peter Mele**,<br><br>                Debtor. | Case No. 11-24015-MLB (Ch. 13) |
| **Kimberly Mele**,<br><br>                Plaintiff,<br>v.<br>**John Peter Mele**,<br><br>                Defendant. | Adversary No. 12-01271-MLB<br><br>**MEMORANDUM DECISION ON PLAINTIFF'S AND DEFENDANT'S CROSS MOTIONS FOR SUMMARY JUDGMENT**[1] |

**Procedural Background**

Plaintiff, Kimberly Mele ("Plaintiff") filed this adversary proceeding against Defendant, John Peter Mele ("Defendant" or "Debtor"), requesting that various divorce-related debts owed to her by

---

[1] This Memorandum Decision constitutes the Court's findings of fact and conclusions of law for purposes of Federal Rule of Bankruptcy Procedure 7052. To the extent findings of fact are set forth in the conclusions of law, or vice versa, they should be construed as though set forth in their appropriate respective sections.

Memorandum Decision on Plaintiff's and Defendant's Cross Motions for Summary Judgment - 1

Defendant be declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), (a)(5), (a)(6), and (a)(15).[2] On October 24, 2012, Defendant moved for summary judgment ("Defendant's Motion for Summary Judgment") on the §§ 523(a)(4) and (a)(5) claims. On January 18, 2013, Plaintiff cross-moved for summary judgment ("Plaintiff's Motion for Summary Judgment") on the § 523(a)(4) claim, and withdrew the § 523(a)(5) claim. The Court heard oral argument on the cross-motions on February 15, 2013 and subsequently took the matter under submission.

## **Jurisdiction**

This is a core proceeding pursuant to 28 U.S.C. § 157(b). Jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 1334(b). Venue is proper pursuant to 28 U.S.C. § 1409(a).

## **Facts**

Plaintiff and Defendant were married on October 6, 1990. They divorced on April 15, 2009. Defendant submitted into evidence a "Verbatim Report of Proceedings," a transcript of Superior Court Judge Patricia Clark's ("Judge Clark") March 17, 2009 oral ruling following the parties' nine day dissolution trial (the "Oral Ruling").[3] Judge Clark found that:

> The parties separated in mid-April 2007. Shortly thereafter, the parties engaged in the collaborative process in the hopes of avoiding litigation. I go back to that because it was some time during or shortly before this period that John liquidated the marital community's largest asset, the Ryan Swanson 401K. He withdrew $274,000 and spent those funds in a year's time.

---

[2] Unless otherwise indicated, all Code, Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

[3] The facts as found by Judge Clark were re-articulated by both parties in their motions and declarations. For example, Defendant's response to Plaintiff's Motion for Summary Judgment provided that "the relevant facts underlying this litigation are not in dispute." Similarly, Defendant's Declaration in support of Defendant's Motion for Summary Judgment "incorporated by reference" Judge Clark's Oral Ruling. Most importantly, neither party disputed *any* of the facts as first expressed by Judge Clark and later re-articulated by their respective adversary. Rather, as explained, both Plaintiff and Defendant incorporated the substance of Judge Clark's findings into their respective pleadings. Thus, pursuant to Rule 7056, the Court considers Judge Clark's fact findings undisputed.

> The evidence is unclear to this court how he spent that money, but it is clear that he did not spend that money to support the community. Without employment except for the tutoring, he has still been able to purchase a 2008 Nissan SUV, a new I-phone [sic], spend hundreds per month on comic books and related expenses. . . .
>
> After considering all of the evidence presented in this case, it is clear that the mother's proposed allocation of debts and liabilities is the most equitable result. The mother will be awarded 60 percent of the community property.
>
> And I turn to the mother's asset sheet because one of the biggest things that happens is that the $274,000 will be in the husband's column as a pre-distribution. That money was withdrawn from the community, expended for his own purposes, and that will be in his column.[4]

On April 15, 2009, Judge Clark signed the Decree of Dissolution (the "Decree"). The Decree incorporated "Exhibit A" which provided a snapshot of the separate and community assets ascribed to each party. Net community assets totaled $584,147. Consistent with Judge Clark's Oral Ruling, Exhibit A imputed the $274,607 of funds inappropriately withdrawn from the community 401K and spent by Defendant, as a pre-distribution to Defendant. When all of the other community assets listed on Exhibit A were accounted for, Plaintiff was ascribed $250,002 of net community assets and Defendant was ascribed $334,145 of net community assets. Thus, the pre-distributed 401K funds constituted approximately 82% of the net community assets ascribed to Defendant. This percentage is

---

[4] Judge Clark's Findings of Fact and Conclusions of Law, issued April 15, 2009, were consistent with the Oral Ruling, providing that:

> John unilaterally liquidated the marital community's largest asset, the Ryan Swanson 401(k). He withdrew $274,000 and spent of [sic] the funds in a year's time. The evidence is unclear as to how he spent the money but it is clear that he did not spend it to support the community. . . . After considering all the evidence presented it is clear to the court that the mother [sic] proposed allocation for the debts and liabilities is the most equitable result. The $274,000 . . . is characterized as his pre-distribution of assets. The mother will be awarded 60% of the community property.

Memorandum Decision on Plaintiff's and Defendant's Cross Motions for Summary Judgment - 3

calculated as follows: $274,607 (401K pre-distribution to Defendant) / $334,145 (net community assets ascribed to Defendant) = .8218, or 82.18%.

Exhibit A reflected that Plaintiff was ascribed fewer net community assets than Defendant, $250,002 as compared to $334,145. However, since Plaintiff was entitled to receive 60% of the net community property, Exhibit A provided for a marital lien in favor of Plaintiff in the amount of $100,486 (the "Marital Lien"). The marital lien was calculated as follows:

> Defendant entitled to 40% of net community assets ascribed to Plaintiff:
> $250,002 x .4 = $100,000
> Plaintiff entitled to 60% of net community assets ascribed to Defendant:
> 334,145 x .6 = $200,487
> Difference:
> $200,487 - $100,000.80 = $100,486.20 Marital Lien

Plaintiff was entitled to $350,488 of net community assets, including the Marital Lien, and Defendant was entitled to $233,659 of net community assets. The Decree incorporated the Marital Lien as a judgment against Defendant in favor of Plaintiff in the amount of the Marital Lien, $100,486, *plus* accrued interest at 12% per annum (the Marital Lien plus interest, the "Decree Judgment").

Defendant filed a Chapter 13 bankruptcy petition on December 5, 2011, Case No. 11-24015-MLB (the "Main Case"). Plaintiff filed a proof of claim for $208.953.06, including accrued interest (the "Claim"). The Claim was broken into two components: $135,746.38 arising from the Decree Judgment, and $73,206.2 arising from an award of attorneys' fees against the Defendant. Plaintiff filed this adversary proceeding on March 30, 2012 seeking to have the components of her Claim declared nondischargeable pursuant to § 523(a)(2)(A), (a)(4), (a)(5), (a)(6), and (a)(15).

Defendant objected to Plaintiff's Claim in the Main Case, and the Court determined that neither component of the Claim constituted a "domestic support obligation" pursuant to § 101(14A). On May 24, 2012, the Court entered an order disallowing the Claim as a priority claim under § 507(a)(1)(A), but allowing the Claim as a non-priority claim (the "Proof of Claim Ruling").

Subsequently, in this adversary proceeding, Defendant moved for summary judgment on the §§ 523(a)(4) and (a)(5) claims. Plaintiff cross-moved for summary judgment on the § 523(a)(4) claim, and withdrew the § 523(a)(5) claim based on the Proof of Claim Ruling.

## **Analysis**

### a. **Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When a properly supported motion for summary judgment has been presented, the adverse party "may not rest upon mere allegations or denials [in] his own pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.

### b. **Fraud or Defalcation in a Fiduciary Capacity**

Section 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity." Plaintiff alleges that the amount represented by the Decree Judgment is nondischargeable on the basis that Defendant's unilateral liquidation and expenditure of the $276,000 of community 401K funds was defalcation while acting in a fiduciary capacity.

#### 1. Fiduciary Capacity

The Ninth Circuit has explained that,

> Whether a relationship is a 'fiduciary' one within the meaning of section 523(a)(4) is a question of federal law. The broad, general definition of 'fiduciary' is inapplicable in the dischargeability context. Instead, the fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing

that caused the debt. . . . Whether a fiduciary is a trustee in that strict and
narrow sense is determined in part by reference to state law.

*Lewis v. Scott*, 97 F.3d 1182, 1185 (9th Cir. 1996) (internal quotations and citations omitted). Thus, this Court must determine whether spouses in Washington are "fiduciaries" for purposes of § 523(a)(4).

There is no case precisely on point. A California bankruptcy court has found that the fiduciary relationship between spouses, as established by California statute, is sufficient to satisfy the federal "fiduciary" requirement for purposes of § 523(a)(4). *See generally In re Lam*, 364 B.R. 379 (Bankr. N.D. Cal. 2007). Similarly, the Ninth Circuit has held that partners engaged in a business partnership can satisfy the definition of "fiduciaries" for purposes of § 523(a)(4). *See generally Lewis*, 97 F.3d at 1186 (Arizona law); *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986) (California law); *In re Short*, 818 F.2d 693, 695 (9th Cir. 1987) (Washington law). "If state law makes clear that a partner necessarily is a trustee over partnership assets for all purposes, then that partner is a fiduciary within the narrow meaning of § 523(a)(4)." *Ragsdale,* 780 F.2d at 797.

Similarly, in *Short*, the Ninth Circuit analogized to the concept of partnership to find that a joint venturer can be a fiduciary for purposes of § 523(a)(4). 818 F.2d at 695-96 (Washington law). The Court reasoned that

> the Washington courts have . . . expanded the duties of partners beyond
> those required by the literal language of the state statute. In Washington,
> it is the universal rule that partners are required to exercise the utmost
> good faith toward each other, and, where an accounting is had, it is the
> duty of a partner who manages, conducts, or operates a partnership
> business, to render complete and accurate accounts of all the partnership
> business. This rule is grounded upon the theory that the managing partner
> is acting as a trustee for his firm. Washington law has long held that the
> relationship among partners is fiduciary in character and imposes upon the
> partners the obligation of candor and utmost good faith in their dealings
> with each other. There is no stronger fiduciary relationship known to the
> law that that of co-partners and each partner is a trustee for all. Moreover,
> under Washington law, joint venturers are like partners. They owe to each
> other undivided loyalty and stand in the position of fiduciaries in all
> matters pertaining to the venture.

*Id.* (internal citations and quotations omitted). The Court concluded that the joint venturer "was in the same position as a managing partner," and that "[u]nder the joint venture agreement and Washington law, [he] had a duty to act as trustee for the affairs of the joint venture." *Id.* at 696; *see also Errez v. Auburn Ace Holdings, LLC*, 2010 U.S. Dist. LEXIS 133028 (W.D. Wash. 2010) (citing *Short*).

Defendant cites Washington's community property statute, RCW 26.16.030, for the proposition that "either spouse, acting alone, may manage and control community property, with a like power of disposition as the acting spouse has over his or her separate property," and lists the six enumerated exceptions. Defendant suggests that since none of the six exceptions apply, he owed Plaintiff no fiduciary duty and was justified in unilaterally liquidating and spending the community 401K funds.

It is true that RCW 26.16.030 does not plainly articulate that spouses in Washington are in a "trust" relationship or owe one another fiduciary duties. However, just as articulated by the Ninth Circuit in *Short*, " Washington courts have . . . expanded the duties of [spouses] beyond those required by the literal language of the state statute." *See Short*, 818 F.2d at 695. Washington case law explains as follows:

> Either spouse, acting alone, may manage and control community property, with a like power of disposition as the acting spouse has over his or her separate property. The statute lists six exceptions to the broad management powers of the acting spouse; outside these six exceptions, either spouse has broad authority to act. *A disposition of community funds is within the scope of authority of the acting spouse so long as he or she is acting in the community interest.*

*Marriage of Schweitzer*, 81 Wn. App. 589, 596-97 (Wash. Ct. App. 1999) (internal quotations omitted; emphasis added), *affirmed by* 132 Wn.2d 318 (Wash. 1997).

"A spouse is required to act in good faith when managing community property, and a disposition of community funds is within the scope of a spouse's authority to act alone only if he or she acts in the community interest." *In re Marriage of Chumbley*, 150 Wn.2d 1, 9 (2003) (quotations omitted).

> Each spouse stands in a relationship of trust to the other and, even after separation, owes a fiduciary duty to manage and preserve the community assets for the benefit of the community. The duty to act for the benefit of the community continues until the marriage is defunct by decree or similar circumstances.

*In re Marriage of Funk*, 2007 Wash. App. LEXIS 3103 at *11 (Wash. Ct. App. 2007) (unpublished; internal citations omitted); *see also In re Marriage of Hadley*, 88 Wn.2d 649, 665 (Wash. 1977) ("The relationship between a husband and wife after marriage is not and is not expected to be an arm's length relationship; . . . [it] is one of trust and confidence in which the managing husband stands in a fiduciary relationship to his wife."). Put another way, community property is "a special form of partnership with the spouses not only owing each other the highest fiduciary duties, but also . . . the statutory duty to manage and control community assets for the benefit of the community." *Peters v. Skalman*, 27 Wn.App. 247, 251 (Wash. Ct. App. 1980).

This Court concludes that Washington common law establishes that spouses stand in a trust relationship with one another and have fiduciary duties to manage community property for the benefit of the community interest. The trust relationship established under Washington common law does not come into existence at the time of a bad act, rather the trust relationship is established at the time of marriage. This trust relationship between spouses in Washington thereby creates "fiduciary capacity" for purposes of § 523(a)(4). Thus, this Court further concludes Defendant was acting in a fiduciary capacity as to Plaintiff at the time he unilaterally liquidated and spent the 401K funds.

**2. Defalcation**

"Defalcation" is not defined in the Bankruptcy Code. The Ninth Circuit has adopted the Black's Law Dictionary definition, defining defalcation as the "misappropriation of trust funds or money held in any fiduciary capacity; the failure to properly account for such funds." *See e.g. Lewis,* 97 F.3d at 1186. "In the context of section 523(a)(4), the term 'defalcation' includes innocent, as well as intentional or

negligent defaults so as to reach the conduct of all fiduciaries who [are] short in their accounts." *In re Baird,* 114 Bankr. 198, 204 (9th Cir. BAP 1990); *see also Banks v. Gill Dist. Ctrs., Inc.,* 263 F.3d 862 (9th Cir. 2001). Thus, "[a]n individual may be liable for defalcation without having the intent to defraud." *See e.g. Lewis*, 97 F.3d at 1187.

In this case, Judge Clark's Oral Ruling made an express finding that Defendant

> withdrew $274,000 and spent those funds in a year's time. The evidence is unclear to this court how he spent that money, but it is clear that he did not spend that money to support the community. . . . And I turn to the mother's asset sheet because one of the biggest things that happens is that the $274,000 will be in the husband's column as a pre-distribution. That money was withdrawn from the community, expended for his own purposes, and that will be in his column.

In other words, Judge Clark's treatment of the $274,000 as a pre-distribution due to Defendant's bad acts was the most significant component in determining the amount of the Marital Lien. This Court concludes that Defendant's unilateral liquidation and expenditure of the $274,607 of community 401K funds for his own purposes was a breach of the marital trust relationship with Plaintiff and was a breach of his fiduciary duty owed to the community. His actions constituted "defalcation" for purposes of § 523(a)(4).[5]

**c. Discargeability of the Decree Judgment**

Defendant's Motion for Summary Judgment vaguely alluded to a potential "causation" or "tracing" issue, suggesting that the Decree Judgment was not traceable to any alleged defalcation by Defendant. Defendant's Declaration states:

> [T]here was no finding by the Superior Court . . . that the award or valuation of any of those assets or debts was based on . . . fraud or defalcation, or that the net amount of the property judgment was based on

---

[5] It is not relevant to this Court's analysis whether it was necessary for Judge Clark to find the equivalent of "defalcation" in considering Defendant's misuse of community funds. The uncontested facts establish that Defendant inappropriately liquidated and spent the $274,607 in community 401K funds and, as explained above, committed defalcation in a fiduciary capacity.

such fraud or defalcation. . . . Exhibit A to the Decree of Dissolution lists
[the 401k Funds] as pre-distributed to me.

Defendant is correct in part -- the amount of $274,607, resulting from his defalcation, was treated as a pre-distribution to him. That amount was then netted against all other community assets and liabilities, and the Court ultimately concluded that the wife was entitled to the Marital Lien in the amount of $100,486. Judge Clark entered the Decree Judgment in favor of Plaintiff in that amount, plus interest.

Nothing in the state court record presented by the parties indicated that in calculating the Marital Lien Judge Clark intended to net the defalcation-related pre-distribution of $274,607 either first or last against the net community assets ascribed to Plaintiff. It is therefore logical that the defalcation-related pre-distribution be netted pro rata.

Since 82.18% of the net community property initially ascribed to Defendant was directly attributable to his liquidation and expenditure of the 401K funds ($276,000 / $334,145), it follows that 82.18% of the net community property ascribed to him was directly attributable to his defalcation. In other words, 82.18% of the net community property ascribed to Defendant was "tainted" by his defalcation.

The Marital Lien was created by Judge Clark to effect her intended 60/40 split of the net community property. Because the Marital Lien was calculated as the difference between Plaintiff receiving 60% of Defendant's net community assets, and Defendant receiving 40% of Plaintiff's net community assets, the Marital Lien is also 82.18% attributable to Defendant's defalcation. Since the Marital Lien became the base amount of the Decree Judgment, this Court concludes that 82.18% of the Decree Judgment is non-dischargeable pursuant to § 523(a)(4). The math is as follows:

Defendant's 40% of Plaintiff's net community assets:
$250,002 x .4 = **$100,000**

Plaintiff's 60% of Defendant's defalcation-tainted net community assets
334,145 x .6 = **$200,487**  (82.18% tainted)

Difference:
**$200,487** (82.18% tainted) **- $100,000.80** = **$100,486.20** (82.18% tainted) Marital Lien Nondischargeable portion:

$100,486.20 x .8218 = **$82,579.39, plus interest.**[6]

## Conclusion

For these reasons, both the Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment are granted in part and denied in part. Plaintiff's counsel shall submit an order in accordance with this Memorandum Decision.

// END OF DECISION ///

---

[6] This situation is analogous to an allocation of damages awarded in multi-claims litigation in which some causes of action are premised on facts that could later create nondischargeable debt in bankruptcy. For instance, if the plaintiff in a state court proceeding was awarded a $100,000 judgment on two unrelated claims, one of which resulted from facts that would support a claim of nondischargeability under § 523, in the amount of $40,000, and one of which would not, in the amount of $60,000, and the $100,000 judgment was partially offset by a $50,000 judgment in favor of the defendant, the math on the amount of the nondischargeable debt would be as follows: $100,000 (judgment) - $50,000 (offset) x .4 (percent of judgment that was nondischargeable) = $20,000.